## KOOISTRA v. ROCKFORD INSURANCE CO.

INSURANCE—SURRENDER OF POLICY—AUTHORITY OF AGENT.

Plaintiff applied to L., an insurance agent, for insurance upon her property, and was informed by L. that the companies which he represented would not accept the risk, but that he would try to place it elsewhere. The local agents of several companies were consulted by L., and policies were successively issued, all of which were ordered canceled when reported to the companies concerned, among which companies was defendant. After a fire, plaintiff sought to hold defendant liable, upon the ground that L. had no authority to accept notice of cancellation and surrender the policy. *Held,* that plaintiff could not be sustained in the inconsistent conten-

tions that L. had authority to surrender prior policies, which, unless canceled, would render subsequent insurance void, and yet, under precisely the same state of facts, had no authority to surrender the policy in suit.

Error to Kent; Adsit, J.   Submitted January 3, 1900. Decided January 23, 1900.

*Assumpsit* by Almira C. Kooistra against the Rockford Insurance Company of Rockford, Illinois, upon a fire policy. From a judgment for plaintiff, defendant brings error. Reversed.

Plaintiff, the owner of a frame hotel in the village of Conklin, authorized her husband to procure, if possible, insurance upon it.   He applied to one Lathrop, an insurance agent.   Mr. Lathrop testified that he informed Mr. Kooistra that it was a hard risk; that he could not write it in the companies represented by him, but that he might be able to place it elsewhere.   The negotiation was carried on entirely between Mr. Kooistra and Mr. Lathrop. Mr. Kooistra's version of the conversation was that he applied to Mr. Lathrop for insurance on the 19th of February, 1898, left with him the deeds containing the description of the property, paid him $50 upon the premium, and instructed him to procure insurance, to which Lathrop replied, "All right."   Mr. Lathrop made no attempt to secure the insurance in his companies.   He first applied to one Melis, local agent of the Continental Insurance Company.   Melis issued a policy, delivered it to Mr. Lathrop, and reported the risk to his company.   The company refused to carry it, and ordered its cancellation.   Melis notified Lathrop, who surrendered the policy for cancellation, and it was canceled.   Lathrop then applied to one Bodwell, the local agent of several companies, including the defendant.   Bodwell told Lathrop that he did not know whether his company would carry it, but he would try.   He then wrote the policy in suit, delivered it to Mr. Lathrop, made the daily report thereof to his company, which refused to carry it, and instructed Mr. Bodwell to cancel it.   Bodwell

notified Lathrop of his instructions, but told him that he had written back an explanation to the company in regard to the risk. The policy was not then canceled. To this letter of Mr. Bodwell the defendant replied, still refusing to carry the risk, and instructing him to cancel it. Bodwell notified Lathrop, who then produced the policy, which was in his possession, and surrendered it to Bodwell for cancellation. It was canceled on March 17, 1898, returned to the home office of the defendant, and destroyed.

Lathrop had paid Bodwell the premium, $54. Bodwell did not then return the premium to Lathrop, but by agreement it was left with Bodwell for the purpose of procuring other insurance, and Bodwell attempted to obtain insurance in another company,—the Milwaukee Mechanics', of which he was the local agent. Bodwell wrote this policy and delivered it to Lathrop. That company promptly refused to carry the risk, and ordered its cancellation. Bodwell so notified Lathrop, and Lathrop surrendered to him that policy, which was canceled. March 3d Lathrop applied to Bodwell for insurance upon the personal property in the hotel. Bodwell wrote a policy in the Security Company of New Haven, of which he was the local agent, and delivered that policy to Mr. Lathrop. That company declined to carry it, and ordered cancellation. Bodwell so informed Lathrop, and that policy was surrendered and canceled. Upon the cancellation of the policy upon the furniture by the Security Company, Lathrop obtained a policy upon it in another company, which latter policy was in force at the time of the fire, which occurred March 25, 1898, and was paid. Bodwell returned the premium to Lathrop after the fire. Whether Lathrop returned it to plaintiff does not clearly appear. On June 10th, after the fire, plaintiff tendered to the defendant the amount of the premium, $54. Lathrop testified that none of these policies were delivered to Mr. Kooistra. Mr. Kooistra testified that the policy in suit was delivered to him; that he retained it in his possession about a week, and then returned it to Lathrop for the

purpose of procuring insurance upon the furniture.   Mr. Kooistra also testified that he knew nothing about the issuance and cancellation of the other policies.   The court left it to the jury to determine whether Lathrop had authority to accept notice of cancellation, to waive five days' notice required by the policy, and to surrender it; instructing them that,—

"If Mr. Kooistra instructed Mr. Lathrop to keep trying to get insurance until he found some company that would carry it, then Lathrop became the agent of the plaintiff, and notice of the cancellation of the policy given by the defendant to him was sufficient notice, and when he surrendered the policy to Bodwell it ended the liability of the defendant thereon."

Plaintiff recovered verdict and judgment.

*Howard, Roos & Howard*, for appellant.
*M. B. Butler*, for appellee.

GRANT, J. (*after stating the facts*).   Was the policy legally canceled?   It is conceded that authority to procure insurance does not imply authority to consent to cancellation.   This is well settled, and the citation of authorities is unnecessary.   Lathrop was the agent of plaintiff.   He was at no time and in no sense the agent of the defendant.   She had no contract with Lathrop for insurance in any particular company.   The fact that Mr. Lathrop had delivered the policy to Mr. Kooistra, who had returned it, is of no consequence.   The possession of the policy, under the circumstances, was sufficient to justify Bodwell in believing that Lathrop had authority to surrender it, and that it was under his control.   Lathrop and Bodwell both understood that it was doubtful if the defendant would carry the insurance.   It was entirely natural that the policy should remain in Lathrop's possession until the company had determined whether it would carry or cancel it.   It was evidently contemplated that Bodwell, on hearing from the defendant, should notify Lathrop.   When Bodwell did so, he found the policy in Lathrop's posses-

sion. Delivery to the plaintiff by Lathrop was not essential to the validity of the policy. It was as valid in the possession of Lathrop as it would have been in the possession of plaintiff or her husband. If a fire had occurred before surrender and cancellation, the defendant would have been liable, unless it was avoided by the existence of the first policy. It therefore follows that the first policy, issued by the Continental Company, was a valid one, unless it was legally canceled. Lathrop was clothed with no more authority to surrender that for cancellation than he was to surrender the one in suit. . It must follow, under plaintiff's theory, that the first policy was in force at the time of the fire. Four policies had been issued, surrendered, and canceled while they were in the agent's possession. Can plaintiff have her choice as to which one of these is valid? If the first was valid, all the others are void. Furthermore, she ratified the act of her agent in surrendering the policy upon the furniture procured through Mr. Bodwell. Was Lathrop her agent to surrender one policy, and not the other? The law will not permit her to say, "Lathrop was my agent to surrender one policy, but was not my agent to surrender another," under precisely the same state of facts. She left the policy in the hands of her agent, and thus placed it in his power to mislead the defendant, who acted in good faith in canceling the policy. If Mr. Lathrop failed to notify plaintiff, this is no fault of the defendant. By leaving the policy with her agent, she placed it in his power to mislead the defendant. If both parties are innocent, it is her act which has misled, and she must be the sufferer.

There is no substantial dispute as to the material facts in the case. It therefore became a question of law for the court. We think the court should have directed a verdict for the defendant.

The judgment is reversed, and, inasmuch as no different case can be made upon a new trial, none will be ordered.

HOOKER, MOORE, and LONG, JJ., concurred with GRANT, J. MONTGOMERY, C. J., concurred in the result.